And we have one final case on the docket this morning, and that is Johnson v. Tewalt. Case number 22-35237. Thank you, Your Honor, and may it please the Court, I'm Craig Durham. I'm appearing on behalf of the appellant, David Johnson. If I can, I'd like to reserve three minutes for rebuttal. As the Court knows, this is a habeas corpus appeal. There is one certified issue for the Court's review. And before I address that, I just want to say as a preliminary matter that it's an honor to appear on behalf of Mr. Johnson, who is currently out on parole. This has been a long journey for him. It's going on almost two decades when this first started, and it arose in a divorce proceeding. There were some allegations of sexual abuse with his daughter, and he was in the middle of a divorce proceeding with his ex-wife. He's been tried twice, once in 2006, and then again in 2011 after the Idaho Supreme Court had reversed his conviction. And the reason we're still here today is because, for some reason, the presiding judge at that second trial decided to inform the jury that there had been a prior trial, that there had been an appeal that the Idaho Supreme Court had reversed and remanded to the district court for a new trial. I don't know why he felt the need to do that, but he did. And since that time, Mr. Johnson has maintained . . . And Mr. Johnson's lawyer didn't have a problem with that. He did have a problem. Well, his first argument, as I understand it, was, I'm busy, I've got other things to do, and I didn't have a chance to see it. But then when he passes the jury for cause, that's . . . I'm a trial judge. That's a big deal. Right. And I understand, Your Honor, and I understand that the state is arguing that that's basically a procedural default. And I understand your argument that the Idaho Supreme Court addressed the merits, and I understand that. But I'm just saying it's a moment of consequence when you pass for cause. That's the moment to say, I've got a problem. Correct. And I 100 percent agree with that, Your Honor. But I disagree that the trial counsel had no problem with this, because if we back up, yes, he was missing in action when the court sent out the script of what he was going to say to the jury. So he didn't object at that time. But as soon as he learned about it, he objected, and he moved to strike the entire panel. Because he told the judge, you basically told these jurors that my client had stood trial and was convicted, and that that's been reversed and remanded. So he did it at that time. Then they went through voir dire, and he passed the jury for cause. My contention would be, he's made the objection, the court's made the ruling clear, and there's no need to re-object at that point after you've moved to strike the entire panel. I don't know that that makes sense when you're talking about the passing the jury for cause. Because even if you get a categorical ruling at the outset, I mean, that happened before voir dire was over. I think maybe voir dire had started, but it wasn't over yet. So during the process of voir dire, you could be asking jurors and probing those issues. It seems like maybe this attorney chose not to for strategic or other reasons. But you could do that. And so the circumstances could change. So at the end of voir dire, then you re-raise the issue, because perhaps something came to light in the questioning of the jurors that this is a bigger problem than you thought before. So I don't know that that argument works. I mean, making the motion at the outset and losing, how does that mean that you don't have to bring the issue up again? Let me take a run at that, Your Honor, because I understand what you're saying. When they were having the discussion about striking the entire panel, the state said, I don't think we should talk about this in voir dire, because I don't want the jurors to be tainted. Now, defense counsel, if you read that exchange, he said something to the effect, well, he didn't object to that process. He didn't necessarily agree with it, but he didn't object. So he acquiesced in it. My argument would be, at that point, the judge has essentially said, we're not talking about this again. This is not something we're going to talk about in voir dire. And so they didn't. They didn't talk about it in voir dire. They probed other issues of bias and prejudice, but not that specific issue. And there was never a curative instruction given to those jurors to say, you can't consider that. And I thought that defense counsel didn't want the curative instruction, because there was a discussion about, we don't want to bring too much emphasis to this issue. All the parties talked about that, yes. And they all basically agreed that this was, frankly, I think it's because it was such a damaging thing that they didn't want to ring that bell twice. So they didn't explore it during voir dire. So on this record, I mean, sort of to follow up with Judge Seaborg's question, on this record, you sort of had multiple opportunities to bring this issue to bear that are passed. And so then we're in federal habeas review, and your client wants us to undo a state process when in the moment, at the day, on the ground, things could have been done to perhaps bring this more to light and have a correction. Well, let me address that, because it's our contention, it has been addressed on the merits. It's been raised on the merits. It's been addressed on the merits in the Idaho Supreme Court, and then again in federal habeas. So the merits are before the court. Now, what I think Your Honor is getting at, as which the state has argued, is that this claim is procedurally defaulted because counsel passed the jury for cause. That was his opportunity to preserve that issue. The district court, the federal district court, Judge Knight, disagreed with that. Because if you go back and read the Idaho Supreme Court's opinion, 90% of that opinion is on the merits of the federal claim. There's a part at the end that talks about passing the jury for cause. So I would see that as kind of an afterthought. The district court in our case, the federal district court, said that the Idaho Supreme So it reached the merits, granted under the Habeas Review, but it reached the merits. Even if it was wrong that the state court failed to clearly indicate the procedural bar, the bar they're relying on was not clear and consistently applied in the Idaho State Courts. The main case that the Idaho Supreme Court relied on You know, stepping back, though, the Idaho Supreme Court plainly mentions this. If you're right that they think they're just addressing the merits and they are not finding a procedural default, why would they bother to mention it? I mean, what's it there for in the opinion? Well, I think it was one of those situations where they had exhaustively gone through the and said kind of, oh, by the way, this is waived. But let me address this from a different angle, Your Honor. Let's assume that the federal district court was incorrect in that and that was a clear invocation of a procedural bar, an alternative holding, if you will. It was not clear and consistently applied because the main case the Idaho Supreme Court relied on, which was State v. Pratt, was decided in 2014. Mr. Johnson's trial was in 2011. So there's no way he could have been on notice in 2011 that a 2014 case was going to say, if you pass the jury for cause, you waive this issue. They also cited a case from 1969, and this is all in our brief, I think it's State v. Bitts, for the genesis of this idea that if you pass a jury for cause, you've waived any of these kind of arguments. In that case, they addressed the merits. They didn't impose the procedural bar on Bitts. They said passing the jury for cause is one factor that we look at to determine whether this jury was biased, and I think that gets to what Judge Forrest is saying a little bit, is that if you do pass the jury for cause, maybe there's an indication you're not as biased as you thought at that point. But it's just one factor. It's not a procedural bar. So to circle back, it has been addressed on the merits, both in the Idaho Supreme Court and in the Federal District Court, to the extent that there's a procedural bar that the State is trying to impose. It was not clear and consistently applied, so it would be unfair to apply it to Mr. Johnson. So this Court needs to get to the merits. So let's go to the merits for a moment. One facet of this is whether or not there's clearly established federal right on implied bias, and we can get to that. But on the factual issue, you're presuming a – what level of knowledge are you presuming of the potential jurors as to being advised of the prior trial? Because when I look at this in cases like – I have to admit, when I looked at the trial, it was rather shocking that, you know, one – I didn't even quite get the whole chain of events where one jury is waiting and they hear the other jury comes in and convicts the person. Yes. Right. I mean, that's just so absurd that you almost don't have to analyze it. You say that can't be. But here the jury is told, well, there was a prior trial, and we're assuming that they understand the significance of the appellate process and you wouldn't be in an appeal process if there had been an acquittal and all of that. What level of knowledge are we – do we assume of the jury panel? Well, I would – you know, I would say it would be a reasonable juror. And yes, that is the argument that we made. The state doesn't appeal acquittals, and that's because of the Double Jeopardy Clause. And that is a bedrock principle of the law. Right. But when you're picking juries, sometimes it's pretty amazing that I'm not sure they all entirely understand these issues. So your argument is premised on the idea that they know. They know that the scenario here is that your client was convicted. That's correct, Your Honor. My argument would be premised on what the verbiage that the district court used imparted that to them. Now, the district court didn't say that Mr. Johnson had been convicted. That's the only thing he didn't say. He said there was a trial. So it's not like this – he didn't say proceeding or hearing where the state could have an interlocutory appeal or something like that. It was a trial. It was completed. There was an appeal, and it was reversed and remanded for a new trial. Even jurors who – I mean, they don't have to be lawyers. This is seeped into the public consciousness that defendants are the ones who appeal convictions. And when the appellate court reverses and remands for a new trial, that's because the defendant has won. It's not the state. It just does not happen that way. It's like, you know, you tell somebody the alphabet. It's A, B, C, and E. You just didn't say D, but it's there. I think, counsel, it's also possible – the Lankford case that the Idaho Supreme Court discussed at length – you know, there was a lot of notoriety around the Lankford case. How much publicity might there have been in this case? Might jurors – might you have jurors who are related to lawyers, are themselves lawyers, but not disqualified from serving on a jury, who might be reading the advance sheets from the Idaho Supreme Court? There's any number of reasons why it might have been a prudent thing for the judge to say, I'm going to get this out. There was a prior proceeding, but you are here to judge guilt or innocence on the basis of what's presented in this courtroom today. I'd have less heartburn if that's what he said. He said there was a prior proceeding, and now you're here to decide this case. But that's not what he said. He said there was a trial, there was an appeal, and it was reversed and remanded back to this court. Yeah. Although, you know, for jurors – for the jurors who are not lawyers, this may be – there may be a great deal of confusion over that. They may not even be aware of the double jeopardy kinds of protections that might be available. There might have – they might have thought – they might have wondered whether there was some kind of a technicality. What if we had, you know, a Hung jury or we had an Allen charge or something – or something else that was sort of – that was sort of odd about this? Or it was – we had problems with, you know, pressure on a juror who did not wish to convict the juror. I mean, there's all kinds of things that might have gone on, none of which is discussed. This seems like a pretty innocuous – a pretty innocuous statement by the judge, one that's done out of caution, that it's possible that somebody has heard about this and he wants to get that out of the way in the first place. And I don't – Your Honor, I don't disagree with – I think this was coming from a place of what you're saying. I want to get this out, probably because of the time difference. These allegations arose in 2004. Here we are in 2011. It's like, why – you know, why? But you don't do it this way. So what – so let's go – let's go straight to then to the clearly established Supreme Court precedent. So what case should the Idaho Supreme Court have read or read more carefully that would have advised them that this is a violation of the Constitution? Well I think – so two answers to that. I mean, I think Leonard is one, Leonard v. United States. This is the short opinion that Your Honor mentioned. And there are other cases in the United States Supreme Court that recognize that some acts and information are so extraordinary – Yeah, that is at such a high level of abstraction that if all you're trying to do – if the only thing you can do is say there are circumstances in which we have implied bias, that is a kind of structural bias for which we don't have to show actual prejudice, then you can – even if we conceded the point, how would you possibly know that this is one of those cases? Because Leonard – Leonard is this case. Now, it's a little more egregious because the jury – Leonard is a lot more egregious. Well, it was sitting in the courtroom, right? But the point is the second jury knew the first jury had convicted him. That's the point. Right. They were sitting right there when a jury came back and said the guy's guilty. I get that. But – That's – But if the judge – I think another way to think of it is this way. If the judge had said there was a prior trial, Mr. Johnson was convicted, there was an appeal, the Idaho Supreme Court reversed and remanded, that clearly would fall within case law that says that is inherently prejudicial because you're telling the jury this guy's been convicted. That's the only word that was left out. The only word. And it was implied. But Leonard – Leonard is your best case. On the – that gets to my second point. I'm running out of time. But on the clearly established federal law. But there's another route for this court, and that's to find that the Idaho Supreme Court – the Idaho Supreme Court made a factual finding that the district judge had not informed the jury that Mr. Johnson had been convicted, that he'd been found guilty. We believe that's an objectively unreasonable finding of fact for all the reasons that I've discussed. That it was so strongly implied. That's an objectively unreasonable finding of fact by the Idaho Supreme Court. But it's not unreasonable if we – if we ask – but you've said he didn't use that word. Right. And the Idaho Supreme Court, I don't think it's done anything more than acknowledge that that word wasn't used. Well, it went a little further than that. They said he didn't use that word, and therefore the jury was unaware of the outcome. That's where we disagree. No. It was so strongly implied that the finding of fact has to be the jury was aware that he had been found guilty and convicted. And once you – if you find that's an unreasonable finding of fact, then under 2254D2, you don't need to worry about the controlling federal – you know, the Supreme Court clearly established controlling federal law, because then you get to de novo review. That makes total sense if you're talking to an audience of lawyers, but we're – common and other very basic facts about our society. That seems a stretch. Well, I – you know, again, I – all I can do is – and I know I'm repeating myself, but if that one word had been put in there, we would have Leonard. That'd be our case. Can I just – more question. Do we have to – if we were to go your way, do we have to find that Hedlund versus Ryan was just – was wrongly decided? No, because in Dyer versus Calderon, an en banc – Which was many years before Hedlund versus Ryan. Before Hedlund, but after Smith versus Phillips, which is the case the State relies on to say that there is no clearly established federal law, Dyer says there is. Dyer says that implied bias as a cause of action goes back at least a century. Hedlund cites Dyer, but doesn't really address it. So I'd suggest there's a tension there. And since Dyer was the en banc court, that's the one that should control. Is – do we have to go beyond the question as to whether there is such a thing as implied bias? Is that clearly established Supreme Court law? Is that all we have to say? Yes, there is such a thing as implied bias? And then we get to decide whether these facts amount to implied bias? So it depends a little, Your Honor. If you're going under 2254d-1, you would have to find that the U.S. Supreme Court has clearly established that implied bias creates a cause of action. Okay. But we don't have to ask what implied bias means. We just have to say that implied bias is a clearly established legal principle. I think that's correct in extraordinary circumstances, yes. And then we get to decide for ourselves whether we think this was – This extraordinary – yes. Okay. And we would just get to make that up in every case? Well, I mean, I think you would look within the Supreme Court parameters, the kind of cases where they have said there is implied bias. Leonard is one. There are the pretrial publicity cases where, you know, the Shepard v. Maxwell case, which is the case in which the fugitive – the movie The Fugitive is made off of, you know, they didn't look to see if there was actual bias in the jury there. There was so much publicity. There's Turner v. Louisiana, which is where sheriff's deputies were bailiffs for the jurors and they were also witnesses in the case. And the Supreme Court said that's so extreme, we don't – we're just not going to examine whether that – there's actual bias, because the risk is intolerable that there is. And I guess the last case I would cite is the judicial bias case, Massey v. A.T. Caperton, or Caperton v. Massey, and that's the case where a judge running West Virginia had received a bunch of campaign contributions and then decided a case with those parties. The U.S. Supreme Court said the risk of bias is so high that we're going to presume it there. So it would have to be in line with something like that, Your Honor. Okay. We'll give you a brief time for rebuttal. Thank you, Your Honor. May it please the Court. I'm Mark Olson, Deputy Attorney General for the State of Idaho, representing Josh T. Waltz, Director of the IDOC. I want to start with the merits in this case and really what I think is the most straightforward part of this case, which is Hedlund v. Ryan, in which this Court found that there is, in nearly established United States Supreme Court precedent on the issue of implied bias. And this Court could not have been more clear in that holding. There's been no subsequent United States Supreme Court cases that have cast any doubt on that. And I'd also note that Hedlund and other cases from this Court which have recognized this have been cited in many, many federal district court cases in the Ninth Circuit to kind of summarily dispose of implied bias assertions. Is your view that your colleague has just misinterpreted Dyer v. Calderon and it's consistent with Hedlund? Well, I think that the biggest issue with Dyer v. Calderon is not the fact that it's pre-Hedlund, it's the fact that it's pre-AEDPA. So the issue of trying to determine whether there was clearly established United States Supreme Court precedent was not before that Court. There is an interesting, I mean, I learned about more of this issue reading Dyer v. Calderon. I'm sorry. There's a lot of context. But we also see that context spelled out in later cases that have gone the other way consistently with this circuit. The state cited one of those cuts in the Eighth Circuit which had a similar analysis of the United States Supreme Court's history of dealing with these types of cases. But ultimately, Hedlund, it's this Court's, and it's not the only one in this Court, that has found this definitively, that there's no clearly established Supreme Court precedent. And like I said, you can find that case cited in district courts all over the Ninth Circuit to dispose of these claims. And I think that is controlling here, and I think it is the most straightforward way to resolve this case. But even if this Court, like the Federal District Court, doesn't want to go as far here to say that there is no clearly established Supreme Court precedent in this area, it is also correct, as the Federal District Court found, that the Idaho Supreme Court's analysis of this issue, its recognition of precedent in the implied bias area, was certainly consistent in a reasonable application of any clearly established United States Supreme Court precedent which does exist. And the Idaho precedent on implied bias, which is what the Idaho Supreme Court relied on in this case, those cases it relied upon, specifically do recognize Supreme Court precedent in Phillips, and thus they certainly took direct account of the Federal constitutional landscape in this area, to conclude, essentially, that implied bias requires a pretty extreme situation. The United States Supreme Court has held this. The Ninth Circuit, in its own criminal cases, has held that. And we don't have that such extreme situation here. Your Honor mentioned Leonard. Most of the others give you that same shocked kind of reaction from modern times. I think there was another one where the police officer drove the seated jury home and took them out to dinner or something like that. So even in Justice O'Connor's concurrence in Phillips, which some circuits have looked at as sort of maintaining this concept of implied bias as its own constitutional entity, even Justice O'Connor recognized that she only wanted to preserve that with respect to the most extreme situations like we saw in Leonard and like we saw in some of those other cases. And it's really not surprising that there's not settled law in this area, and especially because I think this type of situation, perhaps the court could have handled it differently. I think the trial court probably would have handled it differently if it had another shot at it. But ultimately what occurred here doesn't carry the same risk of that extreme situation or the same risk of actual bias as other types of situations in this area. And when you review the relevant cases, especially since the United States Supreme Court recognized that due process does not require a jury to be completely ignorant of the facts of the case. Since that was established by the United States Supreme Court, you see that the prior trials, when there's a prior trial in a case or a prior trial, it does come up occasionally. Sometimes it's by necessity. I think in the Lankford case, it arguably had to be brought up because it was a case 20 or 30 years after. It was also a very, very high-profile case. Right. It was a death penalty case. But why, is that standard practice for a judge to do this? No. No, it is not, Your Honor. And when you read the transcript, I kind of had the same question opposing counsel did. How did this come to be? And when you kind of read the transcript of all of this occurred, I think the judge was certainly concerned about this is a Idaho, it's a rural community. There's a likelihood that people know each other. There's a likelihood that people had knowledge of the prior case. There's a likelihood that people knew that there had been a prior trial and that it went to the Idaho Supreme Court. So with those concerns, I think it was certainly reasonable for the trial court to say, well, let's take a look at this. Let's acknowledge this to the prospective jury so that both parties have the opportunity to then take that knowledge that the jury might have already had and see if that created any biases for either side, frankly. And I wanted to address a brief question. Couldn't you have done that? I mean, I think we all agree. You could have done that with reference to prior, there were prior proceedings. Yes. And you're going to need to do that in the trial because the transcript is probably going to be used for impeachment purposes and other things. So wouldn't that be the way to do it? And then it wouldn't implicate these concerns. I would agree, Your Honor. I would agree that would have been the better course of action here. And I think the standard practice, and this was quite a few years ago, this initial trial took place. From my experience just as an appellate attorney in Idaho, you don't see this in trials. I can't remember another time where it came up like this. So it's not standard practice. I certainly think it was not the best practice in this case. I also think it is not, even if we're looking at the implied bias cases of this court and the United States Supreme Court when they've addressed it pre Phillips, doesn't rise to that level. That creates a constitutional problem that cannot possibly be either rehabilitated or cannot be explored. I mean, I would say this, Your Honor, what the judge's comments certainly did is it created a constitutional right in this case for the defendant to inquire in the way that they sought fit, whether that means the jury, the judge told you this about the prior trial. Are you biased about that? Is that going to impact the ability, your ability to be fair in this case? Or I think as the trial attorney chose a different approach and used more kind of general questions about relying on what you're seeing and hearing in this court as far as evidence in this trial and throwing away anything else you've heard. So that comment did put us into a place where the defendant had a constitutional right to those types of remedies. And that's what Phillips v. Smith was all about. That concept that when you have... Does there need to be some sort of factual development of the record to determine what was understood by these people? Yes. And I believe that since the Phillips case, I think that was basically the holding of that case. And that's how the Supreme Court cases have developed before and since then. That when it comes to implied bias, you are entitled to some type of opportunity to develop that record. And in most situations, that development of the record is going to be sufficient to cure any issues. But that didn't happen here, did it? Yes, it did. Defense counsel certainly had the opportunity to. Now, this preliminary instruction was given to the prospective jury pool before Bois d'Ire. And I think before the attorneys came to court to do Bois d'Ire. So defense counsel had the opportunity, and I think there was a discussion amongst both the parties and the court about the best way to resolve this. But certainly defense counsel had the ability to question the jury about any biases they had. And that's another thing that makes an implied bias assertion a little less, I guess, risky in terms of turning into actual bias, where it all happens before the trial. Like this is the point of Bois d'Ire, is we know these prospective jurors, they have a wide variety of experience. Some understand the criminal law, certainly. Some don't understand concepts involved with the criminal law. Some surely had heard of this case in this community. Some probably didn't hear anything at all. So really the whole point of that process is to uncover any biases which may result from any of those experiences that those jurors had. And defense counsel certainly had the opportunity to do that. What is your view of what the Idaho Supreme Court did or did not do? Do you think that they plainly addressed the merits in the sense of wrestling with whether or not there was an established constitutional right? Does that mean that there's no procedural default that we should be reviewing? No, that's not true, Your Honor. Yes, I would certainly acknowledge the Idaho Supreme Court thoroughly analyzed the merits of this claim. It also decided on an alternative basis that even if there was implied bias that necessitated a retrial, any such implied bias was waived by this procedural bar of passing for cause. And I would suggest that's very common in our Idaho appellate courts. The Idaho Supreme Court and the Idaho Court of Appeals very often will provide numerous alternatives for their holdings, which is very helpful for a habeas attorney that we often have kind of this very thorough review of everything. So the fact that the court breached the merits does not preclude its application, or I'm sorry, the federal court's application of the procedural bar. That was also clearly applied, and that is very distinctly applied. I think if you break down the opinion, there's a list of holdings in the beginning. A distinct holding among those is that the defendant waived any claim of jury bias when he passed the jury for cause at the conclusion of the wadir. And this was more than done, said simply in passing. Then we get a separate heading later on in the opinion after the merits was discussed. And I have to say, that is the thing that's the most surprising to me, is that it's the afterthought. Instead of starting by saying you are procedurally barred, but even if we were to reach the merits, we would do this. We said, well, we got the merits, but even if you didn't get the merits, we would have dinged you on the procedure anyway. It feels all backwards to me. And I would acknowledge, Your Honor, certainly I think it's very common that our appellate courts use alternative grounds. I would agree. This is a little bit more unusual, that we start with the merits and then at the end kind of apply the procedural bar. But I'm not aware of any case law that would defeat the bar in that instance. Especially, it could muddle the case if this was just kind of a throwaway paragraph at the end of that merits section. But again, if you look at the Idaho Supreme Court opinion, we have a separate heading. Well, first we have that separate holding at the beginning of the opinion. And then later on in the body, we have that separate heading, which again provides that the defendant waived any claim the jury was biased when he passed the jury for cause. And then in the body of that itself, it's two paragraphs long. There's not a lot to apply, so it's necessarily going to be shorter than the merits section. But the court then very clearly, distinctly applied this procedural bar. What is your response to your friend across the aisle's argument that this was not an adequate state grounds because it's based on a rule that was developed after this trial? Well, I disagree, Your Honor, that the rule was developed. The case that was cited, Pratt, that particular holding was after the trial. However, Pratt itself relied on prior Idaho case law that the state cites to in its briefing. I think 1969 was the earliest case I cited. But there was a number cited in Pratt. And then if you go back in those cases, those cite a number of cases. And I would also agree with Your Honor's what you noted earlier about how this is not only a clearly established bar in that sense and that it predates this case. It's also something I submit that every Idaho trial attorney knows, that when you pass the jury for cause, that is a monumental decision. It's not simply failing to object. When we say passing for a cause in this instance, it wasn't simply failing to challenge particular jurors. But if you look at the transcript, defense counsel affirmatively passed the jury for cause of the case. Could he have passed the jury for cause except with respect to the general objection? Yeah, sure, I mean, he could place that on the record. I think that would have preserved that for appeal. Did he have any, was there any opportunity here for an interlocutory appeal? Could he have stopped the whole thing in order to get to some higher court to say this is all messed up and there's no reason to go through this trial? There is a mechanism. There's a mechanism for interlocutory. I'm not sure if that would fit all the requirements for that in this case. But a trial counsel certainly could have said, your honor, I'm concluding my questioning here and simply not pass the jury for cause. You're still allowed to continue. Because of that, the Idaho Supreme Court reviews this for fundamental error, which is similar to our plain error, similar steps. If I use plain error, I mean fundamental error. Does that affect the way that we review this? Even if we thought we could get over the procedural bar, are we then looking to see whether there is anything clearly established in the Supreme Court that would tell us that this is plain error as opposed to just error? I don't believe so, your honor. Because as far as the constitutional question of whether the district court should have said this in the first place, and whether we should have got a whole new jury panel, that is preserved. So the primary issue, I guess, that was before the Idaho Supreme Court in terms of that mistrial motion was in front of the court. But as far as the implied bias constitutional challenges, fundamental error didn't come up here, sorry, in that sense. So no, I don't think that changes anything. I think another interesting point on the, and to conclude that, the federal district court did not consider the issue of whether this was a consistently applied procedural bar or not. So frankly, having reviewed this, I'm not quite sure whether this court is willing to entertain that for the first time on appeal, essentially, when it has not been decided below. So that was just something that occurred to me when I was looking at this and I didn't find any answer to that. I think this court could consider that because it is a factual question about the history of the Idaho Supreme Court, which this court is more than capable of reviewing, but I just wanted to note the federal district court did not consider that. I have one other question. If we conclude that there was an adequate and independent state grounds for this decision, do we reach the merits? Do we have jurisdiction to do that? I think this court can choose either way to go in terms of resolving this case.  Independent consistently applied procedural bar, that I think that does resolve the case. But it also would resolve the case if the court finds consistent with Hedlund that there is no. I guess my question is a little bit more pointed. I understand that we could, in normal circumstances, do alternative conclusions. But my question is more, do we have the power to reach any other questions if we conclude that there was an independent state reason for this decision? That's a very interesting question, Your Honor, that I hadn't thought of. And I think, I wonder if that's complicated by the fact that the district court did not consider this. I suppose if the court does conclude that the federal district court erred and that this is a consistently applied procedural bar that the trial court did apply in this case, then I think that would be the end of the analysis. And whether it's jurisdictional, and I guess I'm not comfortable saying that this court wouldn't have the jurisdiction at that point to look at the merits. But it certainly would resolve the case. Any other questions? Thank you, Your Honor. All right, we took your opponent over, so we'll give you three minutes. Okay, I'll be very quick. I only have a couple of points. The first is on the Hedlund versus Dyer v. Calderon issue. Counsel said that Dyer was a pre-EDPA case, which is true. But one of the issues in Dyer was whether, under Teague, implied bias would be a new rule, which is very similar to the issue under EDPA, whether it's a clearly established Supreme Court decision. So I would invite the court to read that section in Dyer. It's on page 984, talks about the ancient lineage of implied bias. It really rejects that argument. Hedlund doesn't address Dyer. So I just want to make that point. The second point on the procedural bar, again, even if the Idaho Supreme Court made an alternative ruling on a procedural bar, it's not an adequate rule to prevent federal review. And Pratt was three years after this case, the case they rely on. Now, Mr. Olson said, well, it cited a bunch of other cases going back to 1969. I invite you to look in our brief. We've gone through those cases. Sometimes the Supreme Court reached the merits. Sometimes it didn't. Sometimes this issue wasn't raised. So it's fundamental habeas law that the federal courts do not honor a state procedural bar that the state itself does not clearly and consistently apply, and so it's not procedurally defaulted, insofar as the judge below, not addressing that issue, is because the judge found there was no procedural default. So those are the only points I wanted to make, Your Honor. I appreciate the time and the argument. Thank you. Thank you, counsel, for your helpful arguments. So the matter of Johnson v. Tewalt is submitted, and that concludes our proceedings for this morning.
judges: BYBEE, FORREST, Seeborg